## ORNSTEIN et v DOZER

Ohio Appeals, 2nd Dist Franklin Co

No 2635.   Decided April 20, 1936

Schwartz & Gurevitz, Columbus, for plaintiffs in error.

Watson, Davis & Joseph, Columbus, for defendant in error.

## OPINION

### By HORNBECK, J.

The parties are in agreement that there is but one claim of error for consideration in this case, namely, was the alleged lease in question executed in conformity with the provisions of §8510 GC.

An appreciation of the question presented may be had from the following facts: The lease in question was signed, executed and acknowledged in duplicate, the lessor retaining one copy and the lessee one copy. The lease consists of a title page, 16 numbered and one unnumbered pages. The 16th page is not completely filled with subject matter of the lease. Following the 16th page is the unnumbered page upon which is found the testatum clause, the signatures of the lessors, Charles H. Dozer and Carrie L. Dozer, his wife, and the lessee, Sigmund Ornstein. Then follow the names of two witnesses and the acknowledgment, signed by a notary public, Franklin County, Ohio, and then follows on this page an assignment which is not signed. We copy the page following page 16, containing the testatum clause, witnesses' signatures and the acknowledgment:

"IN WITNESS WHEREOF, we the said Charles H. Dozer, Carrie L. Dozer and Sigmund Ornstein have subscribed our names to duplicates hereof, this 15th day of June, 1927.

Charles H. Dozer
Carrie L. Dozer
Lessors
Sigmund Ornstein
Lessee

Signed in the
presence of
Bessie W. Reinhard
O. E. Davis
STATE OF OHIO,
FRANKLIN COUNTY, ss:

BE IT REMEMBERED, That on the 15th day of June, 1927, before me, the undersigned, a Notary Public, in and for said county, personally came Charles H. Dozer

and Carrie L. Dozer and Sigmund Ornstein, lessors and lessee above named, who acknowledged the signing of the foregoing lease to be their voluntary act and deed for the uses and purposes therein mentioned.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal the day and year first above written.

Bessie W. Reinhard,
Notary Public, Franklin
County, Ohio."

One copy of the lease, that which was taken by the lessee, was received by the Recorder of Franklin County for record on August 30, 1927, and recorded September 1, 1927, upon which copy there is a back of heavier paper, folded over and forming a narrow facing about ¾ inches wide and through this folder sheet, from the front to the back at both ends, there are brass fasteners, which extend through and bind together the folder, the title page, the 16 pages of subject matter of the lease and the page upon which appears the testatum clause, signatures, names of witnesses, acknowledgment, etc. It also fairly appears that the lease which the lessor took was bound together by fasteners in the manner heretofore described.

It is the claim of counsel for plaintiffs in error that the lease as thus executed and acknowledged did not conform to the provisions of §8510, GC, and was, therefore, an ineffective lease. §8510 GC, insofar as pertinent, provides:

"A deed, mortgage, or lease of any estate or interest in real property, must be signed by the grantor, mortgagor, or lessor, and such signing be acknowledged by the grantor, mortgagor, or lessor in the presence of two witnesses, who shall attest the signing and subscribe their names to the attestation. Such signing also must be acknowledged by the grantor, mortgagor or lessor before judge of a court of record in this state, or a clerk thereof, a county auditor, county surveyor, notary public, mayor, or justice of the peace, **who shall certify the acknowledgment on the same sheet on which the instrument is written or printed, and subscribe his name thereto.**" (Emphasis ours).

Specifically it is claimed by plaintiffs in error that the acknowledgment to the lease is not on the same sheet on which the instrument is written or printed; that the testatum clause and that which is found on the last page of the writing as fastened is not a part of the instrument and that there is no sufficient binding together of the 16 pages of subject matter of the lease and the testatum clause, signatures and acknowledgment as to permit the finding that the acknowledgment is on the same sheet as the instrument, i.e., the last, nor that there is such continuity of meaning between the subject matter of the lease and that which appears upon the page wherein is found the testatum clause as to permit the determination that the lease as fastened together is one instrument.

On behalf of plaintiffs in error we are cited to Winkler v Higgins, 9 Oh St, 600; Poor v Scanlon, 8 O. Dec. Rep. 275; Bridgeman v Wells, 13 Ohio, 43; Richardson v Bates, 8 Oh St, 257; Chandler v Dickman et 28 O.C.A., 297; Wilstach v Heyd, 122 Indiana, 574; Ridgeway v Ingram, 50 Indiana 145; Anderson v Hearold, 10 Ohio, 399; Rollman & Sons Company v The Alaska Realty Company, 2 O.O., 281; Schlaeger v Title Guaranty & Trust Company et, 37 O.L.R., 474; 25 R.C.L., 2318; 27 C. J. 262.

Defendant in error cites and relies upon Norman v Shepherd, 38 Oh St, 320.

It further appears that between the time that the cause was presented and determined in the Municipal Court and the time when the cause was tried in the Common Pleas Court the copy of the lease which had been held by the lessor had been changed in the manner of its fastening, in that the sheets had been pasted together and probably one fastener added. This change in fastening of the sheets clearly appears, not only by an affidavit of one of former counsel for the plaintiff, but also by several other affidavits. The time when the discovery of the change in the fastening of the one lease was made does not appear and we are of opinion that upon the record there can be no doubt as to the condition of the copies of the lease at the time it was executed and delivered and the manner in which the sheets were fastened together and it is upon this original manner of fastening that this cause is determined.

Nor is there any question of fraud urged respecting the execution of the lease. As heretofore stated, one of the copies was filed for record and recorded and the lessee entered upon the premises and the parties, together with the assignees, for many years acted under the terms of the lease.

The first case in Ohio construing §8510, GC, is Winkler v Higgins, supra, wherein it was held in the second proposition of the syllabus:

"A certificate of acknowledgment of a deed, made 'upon a separate strip of paper attached to the deed by a wafer, with the officer's seal upon the same,' by a commissioner of deeds in New York, appointed by the governor of Ohio, under the act for appointing commissioners, passed January 26, 1844, is not in compliance with the statute requiring the officer taking an acknowledgment to 'certify such acknowledgment on the same sheet on which such deed is printed or written'."

This judgment was grounded upon the proposition that the·acknowledgment was on a strip of paper separate from the sheet upon which the instrument was written; that the mere attaching of the acknowledgment in the form of a wafer stuck to the deed did not meet the requirements of the language of the statute. No other question was considered or determined.

The next case in which the section was considered by the Supreme Court was Norman v Shepherd, supra. Here the court had a mortgage deed under consideration. It was written upon two sheets of foolscap paper, which, according to the finding of facts, were attached together by artificial means, consisting of two brass paper fasteners. It will be noted that no stress is laid upon the type of fastening as to whether or not it was recognized as of temporary or permanent character. Some of us remember the use of foolscap paper. It was a sheet of the dimensions of about 13 by 16 or 17 inches. Thus, when two pieces of foolscap paper were bound together eight pages were formed. In the case under consideration the granting clause of the mortgage deed was on the first page. The description of the land commenced on the first page and continued through all of the second and third pages. The conditions of the mortgage began on the 4th page, covered all of said page and a portion of the 5th and 6th pages. Upon the 7th page was found the date of the·mortgage, the signatures of the grantors and their seals annexed, the signatures of the witnesses and the certificate of acknowledgment of a notary public with his notarial seal affixed.

The court, in stating the proposition before it for determination, said on page 322:

"The sole question here is whether the fact that the mortgage was written upon two sheets of paper attached in the manner described rendered it invalid as a mortgage. We think the court below properly decided that it did not.

"There is no rule of law requiring a deed

to be written entirely upon one sheet of paper, unless it be found in the first section of the act of February 22, 1831, 1 S. & C. 460, (now §8510, GC) which requires the certificate of the officer taking the acknowledgment to be 'on the same sheet on which such deed, mortgage, or other instrument may be printed or written'."

Under this statute this court decided in Winkler v Higgins, supra:

"Where the certificate of acknowledgment was upon a separate strip of paper attached to the deed by a wafer, with the officer's seal upon it, that there was a failure to comply with the terms of the statute, and, in that case, it was said, 'The facility with which such a certificate of acknowledgment might be removed from one instrument and attached to others would greatly impair the public security against intentional frauds.'

"This remark has no application to the case before us. Here the certificate of acknowledgment is found upon the sheet containing the testatum clause, the signatures and the seals; and is inseparable from it without mutilation. True, this sheet does not contain upon itself a complete mortgage·deed, but it is also true that neither does the other sheet which precedes it and to which it is attached. No such fraudulent use could be made of such an instrument as is suggested in Winkler v Higgins, the possibility of which it was the intent of the statute to avoid."

The court announced the following syllabus:

"A mortgage deed, in other respects valid, written upon two sheets of paper attached one to the other, the latter of which contains the testatum clause, the signatures and seals of the mortgagors and witnesses, and the certificate of the officer taking the acknowledgment, is not invalid under §1 of the act of February 22, 1831, 1 S. & C., 460. (**Winkler v Higgins, 1 Oh St 599,** distinguished)."

The distinction between this case and Winkler v Higgins is that in the case under consideration the court found that under the facts the acknowledgment met the requirement of the statute in that it was upon the same sheet of paper on which the instrument was written or·printed, whereas in the Winkler case the acknowledgment was on a separate sheet of paper.

Norman v Shepherd, supra, is authority for two propositions: First, that when two or more sheets of paper are bound together

in such a manner as that the removal of any one of them would cause mutilation they may be said to constitute the same sheet, as stated in §8510, GC, and further, that the acknowledgment as there appearing was on a sheet upon which was a part of the instrument acknowledged, namely, the mortgage deed.

In our judgment the acknowledgment on the lease in this case meets both requirements of the syllabus of Norman v Shepherd. Literally, the acknowledgment did not appear in the mortgage deed under consideration in Norman v Shepherd upon the same sheet as the instrument, but the court found that the fastening of the sheets together resulted in such physical condition and connection as that it might be said that the whole instrument was upon one sheet. That is the fact in the instant case. The fasteners employed to bind this lease together are known and recognized as a type of permanent fastening and a page could not be removed without mutilation of the instrument. The fasteners may be properly defined as "rivets." Webster defines a rivet as follows:

"A headed pin or bolt of some malleable material, as wrought iron, soft steel or copper, used for uniting two or more pieces by passing the shank through a hole in each piece and then beating or pressing down the plain end so as to make a second head."

We ordinarily speak of rivets in connection with the binding together of material other than paper, but it will be noted that the definition requires no such restricted meaning. The heads of the rivets in the instant case evidently were pressed down by a machine intended for that purpose. They are, to all intents and purposes, identical with an eyelet, save that there is no hole through the fastener.

In Norman v Shepherd, supra, the court speaks of the means by which the sheets were attached as 'brass paper fasteners." This might include the type of fastening known as the separable brad, which is of more temporary character. In any event, the court in Norman v Shepherd found the fasteners spoken of as brass paper fasteners to meet the requirements of the statute to make the attached sheets one sheet. Likewise, the lease in the instant case meets the requirements of Norman v Shepherd, in that the acknowledgment was taken upon a page or sheet upon which part of the instrument is written or printed. The testatum clause appears upon the same page as the certificate of acknowledgment.

Bouvier's Law Dictionary, Rawles Third Revision, defines testatum clause as "that clause of an instrument with which it concludes." In the same work it is also defined as "the last clause of an instrument of writing, usually contains the words 'In Witness Whereof'." In Standard Dictionary the testatum or witness clause is defined as: "Law—the concluding clause of an instrument or document, usually beginning with the words 'In Witness Whereof,' and followed by the signatures and seal of the party."

Support is given our conclusion by **Mader et v Apple et, 80 Oh St, 691,** wherein the court had under consideration the question whether or not the will before it was signed at the end thereof, as required by §5916, Revised Statutes, now **§10505, GC.** The will was written upon a blank form containing three ruled pages. All of the three dispositive clauses and a part of the fourth clause, wherein was named the testatrix's executor, were found upon the first page. Upon the second page appeared the underscored words of the following sentence:

"I hereby request that my said **executor be not required to give bond as such."**

Following the words emphasized most of the second page was blank and upon the third page was found the testatum clause, the signature of the testatrix, the acknowledgment clause and the signatures of the two witnesses.

The physical facts in the will under consideration parallel closely those found in the lease in the instant cause. The court found that the will was signed at the end thereof and said that "a will is signed at the end when the signature follows all disposing portions of the will," and necessarily found that the testatum clause was a part of the will or instrument, inasmuch as it was the only part of the will which was found upon the page whereon appeared the signature of the testatrix.

At the bottom of page 699 the court said:

"By usage and custom, in every orderly constructed will, the testimonium clause is universally recognized and adopted as the formal conclusion and end of such will, unless from the instrument itself a contrary intent appears; and it is only the space between this testimonium clause and the signature of the party executing such will, that the law regards, and that the statute was intended to regulate, it being perfectly manifest from such instrument itself, when so constructed, that the testi-

monium clause is intended as the end thereof."

We are cited to Schlaeger v Title Guaranty & Trust Co., supra, the second proposition of the syllabus of which is:

"Where a mortgage is executed in such form that the acknowledgment of the mortgagors appears upon a separate sheet, at the top of which is written the final two words of the mortgage: 'original trustee,' the requirement of §8510, GC, is satisfied."

It does appear that the indenture was written upon 35 pages, bound together with ordinary spread brass holders. The court gives no consideration to the type of fastening but relies upon the proposition that some part of the subject matter appears upon the same page as the acknowledgment of the mortgagors. This is not authority against a determination that in the instant case some part of the instrument was on the same page as the acknowledgment but is a further reason supporting the decision in the Schlaeger case that there the acknowledgment was upon the same sheet as the instrument.

We find no conflict in Rollman & Sons Co. v The Alaska Realty Co., supra, with the conclusion which we have reached. Counsel for defendants further urge that the court erred in directing the jury to return a verdict for the plaintiff, in that the jury should have been permitted to determine whether or not the sheet upon which the acknowledgment and signatures of the parties were found could be severed from the instrument without showing evidence of mutilation.

As we have heretofore said, a visual examination of the fasteners by which the pages of the copies of the lease were attached discloses that they are of a permanent character and the court properly said as a matter of law that the pages so bound should be considered as one sheet.

The judgment of the trial court will be affirmed.

BARNES, PJ, and BODEY, J, concur.

## ON APPLICATION FOR REHEARING

Decided May 9, 1936

By THE COURT

Submitted on application for rehearing consisting of several grounds, together with request that the judgment in this cause be certified to the Supreme Court as in conflict with Schlaeger v Title Guaranty & Trust Co. et, 37 OLR, 474.

The propositions urged in the application are as ably presented as they were in the original briefs of counsel. We undertook in our decision to discuss and give our conclusions on all of the major propositions urged in the briefs and again set forth in the application. No useful purpose will be served by protracting the opinion which we heretofore released. The application will be overruled.

We attempted to briefly differentiate the Schlaeger case from the instant cause and believe that the distinction is marked. In the Schlaeger case the court was not required to say whether or not an acknowledgment which was upon the same page as the testimonium clause, signatures of the parties, etc., was on the same sheet as the instrument and therefore met the requirements of the statute and some reliance was placed upon the fact that some part of the subject matter of the mortgage appeared on the same page as the acknowledgment. The court gave no expression in the Schlaeger case which would require us to say that it would have held differently than we, in the instant cause, had the same facts been presented.

We would be well satisfied if the Supreme Court would admit and determine the instant case, but can not say as a matter of law that there is any conflict between our decision in this cause and the judgment in the Schlaeger case which requires certification.

BARNES, PJ, HORNBECK and BODEY, JJ, concur.